## A02A2337. JOHNSON v. THE STATE.
### (576 SE2d 911)

PHIPPS, Judge.

Jeremiah Johnson appeals his convictions of two counts of selling cocaine. He contends that the evidence adduced at trial was not sufficient to sustain the verdict and asserts that the trial court erred in imposing two concurrent sentences of life without parole. Because we find no merit to either claim, we affirm.

1. As a threshold matter, we address the State's contention that this appeal is time-barred and should be dismissed for lack of jurisdiction. The State maintains that Johnson's notice of appeal was untimely and that Johnson failed to file in the superior court the mandatory motion for a time extension.

The record shows that Johnson's sentence was entered on October 6, 2000. The notice of appeal was file stamped on November 2, 2000. Thus, the notice of appeal was filed within 30 days after entry of an appealable judgment as required by OCGA § 5-6-38 (a).[1] Apparently, the court reporter did not file the transcript with the court until June 17, 2002. As to the cause of the delay in filing the transcript, the record is silent.

"[A] trial court may dismiss an appeal for failure to file a transcript only if it determines 'after notice and opportunity for hearing,' that 'there has been an unreasonable delay in the filing of the transcript and it is shown that the delay was inexcusable and was caused by (the appealing) party.' OCGA § 5-6-48 (c)."[2] Here, these requirements were not established.

Next, we address the merits of this appeal. On appeal from a criminal conviction, Johnson no longer enjoys the presumption of innocence and the evidence must be construed in the light most favorable to the jury's verdict.[3] When so considered, the evidence shows that a paid confidential informant purchased cocaine directly

---

[1] Compare *Rowland v. State*, 264 Ga. 872 (1) (452 SE2d 756) (1995) (notice of appeal filed 31 days after entry of judgment was not timely and deprived court of jurisdiction).

[2] *Brumby v. State*, 264 Ga. 215, 216 (1) (443 SE2d 613) (1994).

[3] *Strange v. State*, 244 Ga. App. 635, 636 (1) (535 SE2d 315) (2000).

from Johnson on two dates. Both purchases were controlled drug transactions accomplished under the supervision of law enforcement personnel. On the first occasion, the informant went to Johnson's residence and told Johnson she wanted to buy a half-ounce of crack cocaine. After Johnson placed a bag containing some crack cocaine on a table, she measured it on her own hand scales "to make sure . . . that he wasn't trying to cheat me." She paid Johnson $500 in exchange for the crack.

Less than three weeks later, the informant again went to Johnson's residence to buy more crack cocaine. When Johnson offered to sell her some loose cocaine, she declined, telling him that she wanted "a whole cookie," which would have been an ounce of cocaine. After waiting with Johnson for 20 to 25 minutes for the delivery of the cocaine to his house, she then took the cocaine and weighed it. Determining that the cookie weighed 26.2 grams, less than the 28 grams it should have weighed, she tried "to talk him down on the price." When Johnson refused to lower his price, she paid him $1,000 for the drugs and left. Because the members of the surveillance team remained outside, they could not observe the actual drug deals as the exchanges occurred. The informant and her car, however, were thoroughly searched before both drug transactions. From a photo spread, she identified Johnson as the drug seller. She also identified him in court. A Georgia Bureau of Investigation forensic chemist analyzed the powdered substances, confirmed that they were crack cocaine, and verified the weight of each plastic bag. He testified that the net weight of the first bag was 6.9 grams and the net weight of the second one was 21.2 grams. Based on Johnson's prior felony convictions and citing both OCGA §§ 17-10-7 and 16-13-30, the trial court sentenced him to two concurrent terms of life imprisonment without parole.

2. Johnson contends that the evidence was not sufficient to prove his guilt beyond a reasonable doubt. He complains about purported inconsistencies in testimony as to the amount of money involved and claims there was confusion as to the name of the drug seller. Implying that he was misidentified and insinuating that the informant had not been thoroughly searched, he points out that several other men had purportedly been selling drugs from the same residence.

Conflicts in testimony and questions about identity or witness credibility are matters for jury resolution.[4] As long as there is some competent evidence, even though contradicted, to support each

---

[4] *Mack v. State*, 242 Ga. App. 256 (1) (529 SE2d 393) (2000).

essential element needed to establish the State's case, the jury's verdict will be upheld.[5]

"[A] sale of drugs is complete when the seller delivers the drugs to the feigned buyer."[6] Here, the informant testified that the drug seller gave his name as Tony and told her he was called "Promise." Regardless of the name Johnson used, the fact remains that she identified Johnson as the man who sold her cocaine on two occasions. The white powdered substance she immediately turned over to police after each buy was scientifically analyzed and determined to be cocaine. This evidence was sufficient within the meaning of *Jackson v. Virginia*[7] to sustain Johnson's convictions for selling cocaine.[8]

3. Johnson contends that the imposition of the life sentences was error. He claims that the State's notice of recidivist treatment failed to specify that one of his prior convictions was for possession of cocaine with intent to distribute and not for possession of cocaine as the notice advised. Claiming the notice was defective, Johnson argues that that particular conviction could not be used in aggravation. In the alternative, he asserts that because the State gave him notice of a nonexistent conviction (possession of cocaine), the trial court erred in sentencing him for a fourth felony. The record belies these claims.

(a) OCGA § 17-10-2 requires "clear notice" to a defendant or his counsel of all previous convictions that the prosecution intends to introduce at trial.[9] "Although written notice is preferable, it is not required as long as the notice is clear."[10] The important requirement is that an accused be given unmistakable advance warning that his prior convictions will be used against him at sentencing so he will have enough time to rebut or explain any record of conviction.[11]

Before trial, the State provided two separate written notices to Johnson of its intent to pursue recidivist punishment. In one notice, the State advised Johnson that it would seek recidivist treatment under OCGA § 17-10-7, the general felony recidivist statute, and listed Johnson's three prior felony convictions as burglary, robbery, and possession of cocaine. In the other notice, the State notified Johnson of its intent to seek recidivist treatment under OCGA § 16-13-30, the specific recidivist statute for certain drug offenses, and identified the prior drug conviction as possession of cocaine, "Docket

---

[5] *Newman v. State*, 233 Ga. App. 794 (1) (504 SE2d 476) (1998).

[6] *Robinson v. State*, 164 Ga. App. 652, 654 (1) (297 SE2d 751) (1982).

[7] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[8] See *Leonard v. State*, 241 Ga. App. 899 (528 SE2d 540) (2000).

[9] *Stanford v. State*, 251 Ga. App. 87, 90 (2) (553 SE2d 622) (2001).

[10] (Citation omitted.) *Mullinax v. State*, 242 Ga. App. 561, 563 (2) (530 SE2d 255) (2000).

[11] *Young v. State*, 245 Ga. App. 684, 686 (3) (538 SE2d 760) (2000).

No. 9700717." In so doing, the State advised Johnson that, upon conviction, it would seek sentencing for a fourth felony conviction under OCGA § 17-10-7 and sentencing for a second conviction of possession of cocaine with intent to distribute under OCGA § 16-13-30 (d).

Several months before trial, the State provided Johnson with a copy of the Georgia Crime Information Center (GCIC) report of his criminal history. As to the drug conviction at issue, the GCIC report disclosed the following: "DISP — CONVICTED. COURT DISP DATE — 1997/09/24. OFFENSE-COCAINE — POSSESS/MANUF/SELL/ PURCHASE WITH INTENT TO DISTRIBUTE." The GCIC report reflected the "COURT NBR" as "9700717," the identical number that appeared on the State's pretrial notice indicating a conviction for possession of cocaine. Over defense objection, the trial court admitted proof of Johnson's prior conviction for possession of cocaine with intent to distribute.

State's Exhibit 13 established that Johnson had been accused of possession of cocaine with intent to distribute, waived formal indictment, and entered a guilty plea to that offense as it was charged. Two other exhibits consisting of certified copies of the indictments, pleas, and sentences proved Johnson's previous convictions for robbery and burglary. As in *Young v. State*,[12] we find that the disclosure statements contained in the State's notice of its intent to seek recidivist punishment in combination with the GCIC report constituted proper notice of the convictions to be used in aggravation of punishment.[13] Thus, the notice at issue was not defective.

(b) As to the sentence imposed, the evidence shows that this was Johnson's fourth felony conviction and his second violation of the Georgia Controlled Substances Act.[14] OCGA § 16-13-30 (d) applies to first and second convictions for certain drug offenses, including possession with intent to distribute. Subsection (d) provides that upon a second or subsequent conviction either of possession of a controlled substance with intent to distribute or of the sale of same, the trial court has discretion to impose a sentence of not less than ten years nor more than forty years or life imprisonment. That subsection also states that the provisions of subsection (a) of the general recidivist statute, OCGA § 17-10-7, do not apply to a second such drug conviction; "provided, however, that the remaining provisions of Code Sec-

---

[12] 245 Ga. App. at 686 (3).

[13] See id.

[14] Actually, Johnson had another conviction. But the prosecution did not discover Johnson's conviction for criminal attempt to commit armed robbery in time to use it in aggravation. Although the GCIC report reflected an armed robbery charge against Johnson, the report did not show the disposition on that charge. In sentencing Johnson, the trial court did not consider this additional conviction.

tion 17-10-7 shall apply for any subsequent offense." As the Supreme Court recently noted,

> [i]n interpreting the interplay of § 16-13-30 (d) and § 17-10-7, we must bear in mind the principle that "a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent." In this case, § 16-13-30 (d) provides a specific sentencing scheme for defendants convicted more than once of possessing cocaine with the intent to distribute under § 16-13-30 (b). For this reason, the general recidivist scheme of § 17-10-7 will apply to multiple convictions under § 16-13-30 (b) only if § 16-13-30 (d) permits the applicability of § 17-10-7.[15]

In *Brown v. State*,[16] this court held that while a trial court may not sentence a second time offender under both OCGA §§ 16-13-30 (d) and 17-10-7 (a), a court may sentence a second time offender under both OCGA § 16-13-30 (d) and any remaining provisions of OCGA § 17-10-7. Because Johnson's conviction on Count 1 of the indictment was his second conviction for violating OCGA § 16-13-30 (b), "the trial court was not prohibited from sentencing him under both OCGA §§ 16-13-30 (d) and 17-10-7 (c)."[17] Under subsection (c) of OCGA § 17-10-7, a fourth time felon must serve the maximum time provided in the sentence of the judge. Here, the trial court imposed a life sentence on each count. Notwithstanding Johnson's claim to the contrary,

> where the maximum penalty is life in prison, a trial court lacks discretion to probate or suspend any part of the sentence. It follows that when a three-time recidivist commits a fourth felony for which the maximum penalty is life in prison, the trial court lacks discretion to sentence such felon to anything other than a life sentence without possibility of parole.[18]

Thus, the sentence at issue comports with statutory law.[19]

4. Claiming that the trial court mistakenly "believed that it had an obligation to impose a life without parole sentence," Johnson con-

---

[15] (Footnotes omitted.) *Mann v. State*, 273 Ga. 366, 368 (1) (541 SE2d 645) (2001).

[16] 252 Ga. App. 714, 715-716 (556 SE2d 881) (2001).

[17] *Blackwell v. State*, 237 Ga. App. 896, 898 (516 SE2d 787) (1999).

[18] (Footnotes omitted.) *State v. Jones*, 253 Ga. App. 630, 632 (560 SE2d 112) (2002).

[19] See *Brown*, supra at 716.

tends that the trial court failed to exercise its discretion when sentencing him.[20] We cannot agree.

OCGA § 16-13-30 (d) empowers the trial court with discretion to sentence a second time convicted drug seller or distributor to a range of punishment of not less than ten nor more than forty years, or alternatively, to a life term. And, when OCGA § 17-10-7 (c) of the recidivist statute is applied, that sentence is enhanced to be served without parole. Thus, the court had discretion to sentence Johnson to any punishment that fit within those statutory parameters, and did so. Johnson claims, however, that "the trial court believed it mandatory that it had to sentence [him] to life without parole." The record fails to sustain this assertion. After carefully reviewing the sentencing transcript in its entirety, we cannot say that the trial court did not understand its sentencing options or that it failed to exercise its discretion when sentencing Johnson. And, unlike in *Scott*, supra, the record does not show that the trial court was misled by the prosecutor and mistakenly believed that a life sentence was mandatory on each count.[21] In the absence of any affirmative showing to the contrary, and here, there is none, the trial court is presumed to have properly exercised its discretion in imposing sentence.[22]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 5, 2003.

*James A. Yancey, Jr.*, for appellant.
*Stephen D. Kelley, District Attorney, Ann S. Williams, Assistant District Attorney*, for appellee.

---

[20] See *Scott v. State*, 248 Ga. App. 542, 545 (545 SE2d 709) (2001) (trial court mistakenly observed that the only possible sentence was life without parole).

[21] See also *Brown*, supra at 716.

[22] *Hunter v. State*, 237 Ga. App. 803, 806 (3) (517 SE2d 534) (1999).