NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: February 7, 2023

S22G0593. THE STATE v. ARROYO.

COLVIN, Justice.

Jerry Arroyo, who was charged with trafficking in cocaine, filed a pretrial motion to suppress evidence obtained pursuant to a search warrant for his apartment. Arroyo argued that the warrant was not supported by probable cause because it relied upon evidence illegally obtained in violation of the Fourth Amendment to the United States Constitution, namely, a drug-sniffing dog's positive alert for illegal drugs within the curtilage of his apartment. The trial court reserved ruling on the motion pretrial but denied the motion after the jury was impaneled and sworn. Then, after the State rested its case, the court sua sponte changed course, granting the motion to suppress and ordering a mistrial without prejudice based on a finding that the dog had entered the curtilage of the apartment when it sniffed

immediately in front of Arroyo's door.

Relying on OCGA § 5-7-1 (a) (4), which permits the State to appeal from certain orders "suppressing or excluding evidence illegally seized" in criminal cases, the State appealed the trial court's ruling, and the Court of Appeals affirmed. See *State v. Arroyo*, 362 Ga. App. 207 (867 SE2d 607) (2022). We granted certiorari, asking the parties to address (1) whether the Court of Appeals had jurisdiction to hear the merits of the State's appeal, and (2) if so, whether the Court of Appeals erred in affirming the trial court's ruling on the motion to suppress. Because OCGA § 5-7-1 (a) (4) did not authorize the State's appeal, we conclude that the Court of Appeals lacked jurisdiction over the case. Accordingly, we vacate the Court of Appeals' judgment and remand with instructions to return the case to the trial court for further proceedings consistent with this opinion.

"OCGA § 5-7-1 (a) establishes the universe of appeals the State is permitted to seek in criminal cases," and thus "appellate courts do not have jurisdiction to entertain" an appeal filed by the State in a

criminal case that falls "outside the ambit of [that provision]." *State v. Wheeler*, 310 Ga. 72, 74 (1) (849 SE2d 401) (2020) (citation and punctuation omitted)).  As relevant here, subdivision (a) (4) of OCGA § 5-7-1 provides:

> (a) An appeal may be taken by and on behalf of the State of Georgia from the superior courts, state courts, and juvenile courts and such other courts from which a direct appeal is authorized to the Court of Appeals or the Supreme Court in criminal cases and adjudication of delinquency cases in the following instances:
>
> . . .
>
> (4) *From an order, decision, or judgment suppressing or excluding evidence illegally seized* or excluding the results of any test for alcohol or drugs *in the case of motions made and ruled upon prior to the impaneling of a jury or the defendant being put in jeopardy, whichever occurs first*[.]

OCGA § 5-7-1 (a) (4) (emphasis supplied).

"In interpreting statutes, we presume that the General Assembly meant what it said and said what it meant." *Langley v. State*, 313 Ga. 141, 143 (2) (868 SE2d 759) (2022) (citation and punctuation omitted).  "Accordingly, we afford the statutory text its plain and ordinary meaning," *Bell v. Hargrove*, 313 Ga. 30, 32 (2) (867 SE2d 101) (2021) (citation and punctuation omitted), and "read

3

the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would," *Langley*, 313 Ga. at 143 (2) (citation and punctuation omitted). "When, as here, statutory text is clear and unambiguous, our interpretive task begins and ends with the text itself." *Bell*, 313 Ga. at 32 (2) (citation and punctuation omitted).

Under the plain language of OCGA § 5-7-1 (a) (4), the State may appeal "[f]rom an order . . . suppressing or excluding evidence illegally seized" only if certain conditions are satisfied. Specifically, the State may only appeal such an order if the motion to suppress or exclude evidence illegally seized was both "made *and* ruled upon *prior to*" the sooner of two events, either "[1] the impaneling of a jury *or* [2] the defendant being put in jeopardy." OCGA § 5-7-1 (a) (4) (emphasis supplied). "Jeopardy attaches when the jury has been impaneled and sworn," *Rios v. State*, 311 Ga. 639, 643 (2) (859 SE2d 65) (2021) (citation and punctuation omitted), "or, in a bench trial, when the judge begins to receive evidence," *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (I) (97 SCt 1349, 51 LE2d 642)

4

(1977).

Here, Arroyo "made" his motion to suppress evidence illegally seized *before* "the impaneling of a jury" and *before* he was "put in jeopardy." OCGA § 5-7-1 (a) (4). But his motion was not "ruled upon" before either of those two events. Id. Rather, it was only *after* the jury was impaneled and *after* jeopardy had attached that the court ruled on the motion to suppress. See *Rios*, 311 Ga. at 643 (2). Accordingly, OCGA § 5-7-1 (a) (4) did not authorize the State to appeal the trial court's order granting Arroyo's motion to suppress evidence seized from his apartment, and the Court of Appeals lacked jurisdiction to rule on the merits of the State's appeal. See *Wheeler*, 310 Ga. at 74 (1).

The State contends that, although the trial court did not rule on the motion to suppress until after the jury was impaneled and Arroyo was put in jeopardy, its appeal nevertheless fell within the scope of OCGA § 5-7-1 (a) (4) because the court granted a mistrial, thereby returning the case to a pretrial status. This argument, however, finds no support in the language of OCGA § 5-7-1 (a) (4).

5

The court "ruled upon" the motion after the jury was impaneled and Arroyo was put in jeopardy, and even if the subsequent grant of a mistrial returned the case to pretrial status, the case was not in pretrial status when the court "ruled upon" the motion. OCGA § 5-7-1 (a) (4).

Nor are we persuaded by the State's interpretation of *State v. Burton*, 314 Ga. 637 (878 SE2d 515) (2022). The State notes that, in *Burton*, we decided the merits of the State's challenge to a trial court ruling on a motion to suppress where the State had waited until "[a]fter entry of the mistrial order" to appeal the ruling. *Burton*, 314 Ga. at 642 (1) (b). But *Burton* did not consider or decide whether OCGA § 5-7-1 authorized the State's appeal and is therefore not precedent on that point. See *Wolfe v. Bd. of Regents of the Univ. System of Ga.*, 300 Ga. 223, 231 (2) (d) (794 SE2d 85) (2016) ("Because these decisions did not address the appellate court's jurisdiction, . . . they are not authoritative precedent on any jurisdictional issue."). Moreover, because the order from which the State appealed in *Burton* was a *pretrial* order suppressing evidence,

6

see *Burton*, 314 Ga. at 640, 642 (1) (b), there was no dispute that the motion to suppress at issue was "made and ruled upon prior to the impaneling of a jury or the defendant being put in jeopardy," OCGA § 5-7-1 (a) (4).[1]

Finally, the State argues that we should create an exception to OCGA § 5-7-1 (a) (4) "when the trial court grants a motion to suppress midtrial" to "ensure that the intent of the legislature authorizing the State to appeal specific rulings is upheld." However, we lack authority to create a judicial exception to the statutory requirements for appellate review. See *Wheeler*, 310 Ga. at 74 (1) ("[I]f the State attempts an appeal outside the ambit of OCGA § 5-7-1 (a), the appellate courts do not have jurisdiction to entertain it." (citation and punctuation omitted)). Cf. *Cook v. State*, 313 Ga. 471, 479 (2) (a) (870 SE2d 758) (2022) (explaining that we lacked

---

[1] The State also cites *State v. Smalls*, 203 Ga. App. 283 (416 SE2d 531) (1992), where the State appealed from a trial court's mid-trial order suppressing evidence, and the Court of Appeal exercised jurisdiction under a prior version of OCGA § 5-7-1. See *Smalls*, 203 Ga. App. at 283-284 (1), (2). To the extent that *Smalls* conflicts with our interpretation and application of OCGA § 5-7-1 (a) (4), it is disapproved.

authority to permit appeals that were "neither authorized by our common law nor established by statute" (footnote omitted)). Moreover, we presume that the legislature "said what it meant," *Langley*, 313 Ga. at 143 (2), and "[i]t is not for us to second-guess the General Assembly's policy determinations as embodied in the statutory language it enacted," *Bell*, 313 Ga. at 40 (5).

Because OCGA § 5-7-1 (a) (4) did not authorize the Court of Appeals to address the merits of the State's appeal, we vacate the judgment of the Court of Appeals and remand the case. On remand, the Court of Appeals is directed to return the case to the trial court for further proceedings consistent with this opinion.

*Judgment vacated and case remanded with direction. All the Justices concur.*

8